## Richmond

## ALLIED PRODUCTIONS, INC., ET AL. V. ROY H. DUESTERDICK, ETC., ET AL.

March 4, 1977.

Record No. 751444.

Present, All the Justices.

*Edward D. Barnes (Bremner, Byrne, Baber & Janus,* on briefs), for plaintiffs in error.

*Philip J. Walsh (James C. Gregg; Randell Hunt Norton; Macleay, Lynch, Bernhard & Gregg,* on brief), for defendants in error.

COCHRAN, J., delivered the opinion of the court.

This writ of error was granted to test the sufficiency of a motion for judgment seeking damages for legal malpractice.

Allied Productions, Inc., a Georgia corporation, Howard E. Caldwell, Martha Caldwell, and Charles D. Wheeler (collectively, the client) filed a motion for judgment against Roy H. Duesterdick, individually, and Richard N. Baylinson, Roy H. Duesterdick, and Morton Kudysh, t/a Baylinson, Duesterdick & Kudysh, a partnership engaged in the practice of law (collectively, the attorney). The motion alleged that, by reason of the attorney's negligence in failing to defend a suit sounding in fraud, the client had suffered a default judgment upon a jury's

verdict awarding compensatory damages of $10,000 and punitive damages of $200,000. The motion sought $500,000 in damages based upon several claims, *viz.*, the principal and interest of the default judgment, attorneys' fees, court costs, mental anguish, inconvenience, grief, and embarrassment. The motion did not allege that any part of the default judgment had been paid. The attorney demurred, and for purposes of the demurrer, the parties stipulated that no payment had been made and that the client's claim based upon injuries other than the default judgment would be withdrawn without prejudice.

By final order entered August 7, 1975, the trial court ruled that "since the plaintiffs have not paid any portion of the judgment against them, the damages, if any, are too remote, speculative and contingent" and that "the Motion for Judgment fails to allege actual damages". Upon these rulings, the demurrer was sustained and the case dismissed.

Although this Court decided the first legal malpractice case reported in the United States, *Stephens* v. *White*, 2 Va. (2 Wash.) 203 (1796), we have not passed upon the precise issue presented here. Nevertheless, we have followed the general rule that in order to recover damages for the negligence of his attorney the client must prove the extent of the damages. Thus, in *Staples' Ex'ors* v. *Staples*, 85 Va. 76, 85, 7 S.E. 199, 203 (1888), we said:

> "[I]n cases of negligence, the extent of the damages sustained by the complainant must be affirmatively shown; for the attorney is only liable for the actual injury his client has received, and not necessarily for the nominal amount of the demands for collection. 2 Greenl. Ev., sec. 146. Accordingly, when a debt is alleged to have been lost by the attorney's negligence, it must be shown that it was a subsisting debt, and that the debtor was solvent." (Citations omitted.)

This case was cited as being in accord with the weight of authority in *Maryland Casualty Co.* v. *Price*, 231 F. 397 (4th Cir. 1916), where it was said at 401-03:

> "In a suit against an attorney for negligence, the plaintiff must prove three things in order to recover: (1) The attorney's employment; (2) his neglect of a reasonable duty; and (3) that

such negligence resulted in and was the proximate cause of loss to the client. . . .

＊　＊　＊　＊

". . . The rule established by these cases is to the effect that suits against attorneys for negligence are governed by the same principles as apply in other negligent actions. If an attorney, in disregard of his duty, neglects to appear in a suit against his client, with the result that a default judgment is taken, it does not follow that the client has suffered damage, because the judgment may be entirely just, and one that would have been rendered notwithstanding the efforts of the attorney to prevent it. It is said that there is a difference between the case of an attorney who fails to do anything for his client, and one who makes an inexcusable mistake in attempting to comply with instructions; but we do not perceive any basis in principle for such a distinction. In either case the burden is upon the client to prove the damages he has suffered."

The court affirmed the ruling of the trial court which sustained the demurrer of the attorneys in an action against them initiated by the client to recover the amount of a default judgment entered against and paid by the client because of the alleged failure of the attorneys to defend a suit. The basis of the ruling was the failure of the client to allege that it had a meritorious defense to the suit, which the attorney negligently failed to interpose, and that the judgment would not have been recovered against the client or that such judgment would have been for a lesser amount. To the same effect see *Feldesman* v. *McGovern*, 44 Cal. App. 2d 566, 568, 112 P.2d 645, 647 (1941), and cases cited therein.

In *Weiner* v. *Moreno*, 271 So.2d 217, 219 (Fla. App. 1973), after stating that the rule established by *Price, supra*, had been adopted in legal malpractice cases in approximately 45 states, the Florida court approved the rule requiring, as its third prerequisite, proof of proximate cause of loss to the client. *See also Wooddy* v. *Mudd*, 258 Md. 234, 265 A.2d 458 (1970); Annot., 45 A.L.R.2d 5; Annot., 45 A.L.R.2d 62.

It has been said that the better reasoned cases support an award of damages in the full amount of the judgment suffered

*and paid* by the client where he can prove that a timely appeal, which the attorney negligently failed to file, would have resulted in a reversal of the judgment and entry of judgment in his favor as a matter of law. *Better Homes, Inc.* v. *Rodgers,* 195 F. Supp. 93, 97 (N.D. W. Va. 1961).

In our consideration of the present case we are guided by the analogy we find in the rules governing other types of cases. We have held that a right of contribution arises only when one tortfeasor has paid or settled a claim for which other wrongdoers are also liable. *Bartlett* v. *Recapping, Inc.,* 207 Va. 789, 793, 153 S.E.2d 193, 196 (1967). We have also held that there can be no recovery on an indemnity obligation where there has been no actual loss or damage. *American National Bank* v. *Ames,* 169 Va. 711, 748, 194 S.E. 784, 797 (1938). We see no reason to formulate an exception to this principle that would apply only to attorneys who are defendants in legal malpractice actions.

Insofar as the client in the present case claims damages on account of the default judgment it is in the nature of a claim for indemnity in which the client seeks to have the attorney save him harmless from the debt owed to the judgment-creditor. But until the client has made a payment on that debt he has suffered no actual loss or damage.

Accordingly, we hold that when a client has suffered a judgment for money damages as the proximate result of his lawyer's negligence such judgment constitutes actual damages recoverable in a suit for legal malpractice only to the extent such judgment has been paid. Here, the motion for judgment failed to allege such actual damages. It failed, therefore, to state a cause of action, and the trial court correctly sustained the demurrer.

*Affirmed.*

POFF, J., dissenting.

I cannot join in this opinion.

In my view, the analogy the majority find in the rules concerning a tort-feasor's right to contribution from a joint tortfeasor and the right of an indemnitee against the indemnitor is tenuous at best. The cases for which those rules are

fashioned are wholly unlike the case at bar. Those cases concern essentially the rights and obligations of the immediate litigants; a legal malpractice case involves standards, societal values, and public policies with infinitely broader impact. In unique ways, the quality of the practice of the legal profession affects the welfare of the body politic. The relationship between a lawyer and his client is a fiduciary relationship, one which commands the highest fidelity to a most solemn trust, for the lawyer is the expert and the client is utterly dependent upon his knowledge, his skill, and his honor. Any breach of a lawyer's fiduciary duty injures his client, demeans the integrity of the profession, and impairs public confidence in our system of justice. Lawyers are officers of the courts, subject to the supervisory powers of the courts. In the exercise of those powers, courts have a responsibility to the client, to the profession, and to the public at large to make and enforce rules which promote excellence in the practice of the law and energize the distinctive rights and obligations of the lawyer-client relationship. Those rules need not be restricted by rules made for other cases.

I am anxious about the precedential effect the rule the majority adopt may have. If the client has no cause of action until he has paid the judgment against him, then the larger the judgment, the greater the client's burden and the lawyer's impunity; the greater the injury wrongfully inflicted, the less the liability of the wrongdoer. The rule would seem to penalize a lawyer for his negligence when it costs his client a modest judgment but grant him immunity when his negligence results in a judgment too large for the client to pay. Furthermore, when the judgment forces the client into a state of insolvency, the rule may prejudice not only the client but his general creditors as well. Finally, the rule the majority adopt will force the client to choose whether to postpone suit against his negligent lawyer until he has paid his judgment-creditor in full or to institute a separate suit against his lawyer for each partial payment he makes. How the latter course might be affected by the doctrine of *res judicata* one can only wonder.

I would adopt a different rule and confine its application to legal malpractice cases such as the one at bar. The rule I favor would hold that a client's allegation of a money judgment suffered as the proximate result of his lawyer's negligence

constitutes an allegation of actual damages sufficient against a demurrer.

There is little remote, speculative, or contingent about a money judgment. Indeed, it is a legal creature of singular dignity. Such a judgment calls into existence what did not exist before, *viz.*, a liquidated debt. Except for jurisdictional defect, that judgment and the debt it creates cannot be collaterally attacked and is actionable in every state. The recorded judgment constitutes a continuing lien (securing the debt and the interest as it accrues) on the debtor's assets (presently owned and later acquired), a lien that is enforceable by public sale. Subject to the statute of limitations, the debt survives the debtor's death and may be revived against his personal representative. Code § 8-396 (Cum. Supp. 1976). Some judgments, such as that suffered by the client here, survive bankruptcy. 11 U.S.C. § 35.

Opposing the rule I favor, the attorney argues that it might enable a client who had won a verdict against his lawyer to enjoy a "windfall". He reasons that the client might collect from his lawyer and, for one reason or another, fail to pay his own judgment-creditor. This argument ignores the remedies available to a judgment-creditor. Moreover, any danger of a "windfall" could be minimized by appropriate instructions on remand.

Applying the rule I favor, I would reverse the judgment, restore the motion for judgment to the docket, permit the client upon request to reinstate the several claims which, by stipulation, were withdrawn without prejudice, and grant the client an opportunity to prove the elements of the cause of action he has stated.